UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:19-cv-00250-RJC
(3:17-cr-00253-RJC-DCK-1)

| | |
|---|---|
| **DEREK JOSEPH PARKER,** ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Respondent. ) | |
| ) | |

**THIS MATTER** is before the Court on Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. [CV Doc. 1].[1]

**I.     BACKGROUND**

On July 7, 2017, Petitioner Derek Parker ("Petitioner") was charged in a Criminal Complaint with drug trafficking conspiracy, namely heroin, in violation of 21 U.S.C. §§ 846 and 841(a) and possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c). [CR Doc. 1: Criminal Complaint]. The offense conduct was alleged to have occurred from March 6, 2017 to the date of the Complaint. [Id.]. Then, on August 21, 2017, Petitioner was charged in a Bill of Indictment with only the drug trafficking conspiracy offense (Count One). [CR Doc. 12 at 1]. The Information charged that over 100 grams of heroin was reasonably foreseeable to Petitioner with respect to Count One. [Id.].

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 3:19-cv-00250-RJC, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 3:17-cr-00253-RJC-DCK-1.

The parties reached a plea agreement pursuant to which Petitioner agreed to plead guilty to Count One and the Government agreed to dismiss any remaining counts against Petitioner. [CR Doc. 13 at ¶¶ 1-2: Plea Agreement]. In the plea agreement, Petitioner acknowledged his understanding of the maximum and minimum penalties for the charged offense, that is, a mandatory minimum term of five years and a maximum term of 40 years. [Id. at ¶ 5]. The parties also agreed to jointly recommend the Court make certain findings and conclusions as to the Sentencing Guidelines (U.S.S.G.). [See id. at 8]. These included, in pertinent part, the following:

> …
> b.   The amount of mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, that was known to or reasonably foreseeable by [Petitioner] including relevant conduct) was approximately two (2) kilograms of heroin.
>
> c.   The U.S.S.G. §2D1.1(a)(2), U.S.S.G. §2D1.1(b)(1) and §2D1.1(b)(12) enhancements are applicable herein[.]
>
> d.   The parties further agree that in this specific case, a downward variance is appropriate.
>
> As a result, after incorporation of enhancements, an acceptance of responsibility reduction, and departure, the parties agree [Petitioner's] adjusted offense level is **31**.
>
> **38** [2D1.1(a)(2)], [2D1.1(a)(5)]
> + **2** [2D1.1(b)(1)]
> + **2** [2D1.1(b)(12)]
> - **3** (AOR)
> - **8** (Downward Departure) = **Offense Level 31**.
>
> e.   Unless otherwise set forth herein, the parties agree that they will make the above recommendations as to the offense level, and will not seek any other enhancements or reductions to the offense level.

[Id. at ¶ 8]. Petitioner stipulated that there was a factual basis for his guilty plea, that he had read it and understood it, and that the factual basis could be used by the Court and the United States Probation Office to determine the applicable advisory guideline range or the appropriate sentence

under 18 U.S.C. § 3553(a). [Id. at ¶ 15]. Petitioner also agreed that the factual basis was true and accurate and did not object to any provisions therein. [See CR Doc. 14: Factual Basis]. The factual basis set forth Petitioner's offense conduct in detail and specifically stated that, "[a]gents determined [Petitioner] trafficked approximately 2,000 grams of heroin between December 2016 – July 6, 2017, the day of his arrest." [Id. at 2]. In the factual basis, Petitioner acknowledged that a December 30, 2016 sale of heroin conducted by Petitioner in Matthews, North Carolina, resulted in his customer dying of an overdose. Petitioner learned of this death in January 2017. [Id. at 5]. [Id. at 2].

Petitioner pleaded guilty in accordance with the plea agreement. At the plea and Rule 11 hearing, Petitioner was represented by W. Kelly Johnson ("Johnson"). At this hearing, Petitioner testified that he understood that he was under oath and required to give truthful answers to the questions asked by the Court. [CR Doc. 16 at ¶ 1: Acceptance and Entry of Guilty Plea; CR Doc. 43 at 8: Plea Hearing Tr.]. Petitioner testified that he had received a copy of the Information and that he had discussed it with his attorney. [Id. at ¶ 8; CR Doc. 43 at 9]. The Court reviewed the charge, including its minimum and maximum penalties. [Id.; CR Doc. 43 at 3-4, 10]. Petitioner testified that he understood the charge and the penalties and that he had been over the charge with his attorney. [Id. at ¶ 9; CR Doc. 43 at 10, 13-14]. Petitioner further testified that he had spoken with his attorney about how the Sentencing Guidelines might apply to his case and that the District Judge would not be able to determine the applicable guidelines range until after Petitioner's Presentence Investigation Report (PSR) was prepared and Petitioner had the opportunity to comment on it. [Id. at ¶¶ 13-14; CR Doc. 43 at 11]. Petitioner acknowledged that he understood that if the sentence imposed were more severe than Petitioner expected, or the Court did not accept the Government's sentencing recommendation, Petitioner would remain bound by his plea and

have no right to withdraw. [Id. at ¶ 17; CR Doc. 43 at 12]. Petitioner confirmed that he was, in fact, guilty of the charge to which he was pleading guilty. [Id. at ¶ 24; CR Doc. 43 at 14].

Counsel for the Government described the terms of the plea agreement in detail. [Id. at ¶ 25; CR Doc. 43 at 14-17]. After the Government reviewed the terms of the plea agreement, Petitioner testified that he had been over the agreement carefully with his attorney, that he understood it, and that he agreed to its terms. [CR Doc. 43 at 18; see Doc. 16 at ¶ 26]. Petitioner also testified that he had reviewed the factual basis with his attorney and that he had read it, understood it, and agreed with it. [Id. at 19-20; CR Doc. 16 at ¶ 31]. Petitioner specifically testified that he was "satisfied with the services of [his] lawyer in this case" and, when asked if there as anything he would like to say about those services, Petitioner testified, "Grateful for his help." [Id. at 20; CR Doc. 16 at ¶¶ 35-36]. Petitioner's attorney then attested that he had reviewed all the features of Petitioner's case with him, including the terms of the plea agreement, and that he was satisfied that Petitioner "knows what he's doing." [Id. at 21; CR Doc. 16 at ¶ 39]. Thereafter, the Court found that Petitioner's guilty plea was "knowingly and voluntarily made" and "that [Petitioner] understands the charges, and the potential penalties and consequences of his plea." [Id. at 21-22; CR Doc. 16 at p. 4]. The Magistrate Judge then accepted Petitioner's guilty plea. [Id.]. After Petitioner's plea hearing, the Court appointed new counsel, David A. Brown ("Brown"), to represent Petitioner. [10/23/2017 and 10/24/2017 Docket Entries].

Before Petitioner's sentencing, a probation officer prepared a PSR. [CR Doc. 27: PSR]. In the PSR, the probation officer recommended a Base Offense Level of 38 under U.S.S.G. §2D1.1(a)(2) because a death resulted from the use of heroin sold by Petitioner. [Id. at ¶ 3]. The probation officer recommended a two-level enhancement for possession of two firearms during the course of the conspiracy, U.S.S.G. §2D1.1(b)(1); a two-level enhancement for maintenance of

4

a premises for the purpose of manufacturing or distributing the controlled substance, U.S.S.G. §2D.1.1(b)(12); and a three-level reduction for acceptance of responsibility, for a Total Offense Level (TOL) of 39. [Id. at ¶¶ 31-32, 38-40]. The probation officer computed a criminal history category of IV, which together with a TOL of 39, yielded a guidelines range of imprisonment of 360 to 480 months, U.S.S.G. §5G1.1(a). [Id. at ¶¶ 76, 109]. The PSR provided that statutory minimum and maximum penalties of five and 40 years, respectively. [Id. at ¶ 108]. The PSR also noted the parties' agreement that a downward variance of eight levels is appropriate in this case, which, if accepted by the Court, would have changed the TOL from 39 to 31, for a guidelines range of 151 to 188 months. [Id. at ¶ 110].

The probation officer also reported that Petitioner suffered third-degree burns from a welding accident while he was working. [Id. at ¶ 99]. Petitioner was out of work for six months and has severe burn scars on his entire back from that accident. The PSR report that, due to the accident, he was prescribed a muscle relaxer and pain and anxiety medication, but that he is no longer taking these medications. [Id.]. At the time of his arrest, Petitioner had been using heroine daily. [Id. at ¶¶ 101].

Petitioner's sentencing hearing was held on April 20, 2018. [CR Doc. 44 Sentencing Tr.]. At this time, Petitioner was represented by his new counsel, David Brown. [See id. at 1]. At the sentencing hearing, Petitioner testified that he read and understood the PSR, to which there were no objections, and that he had had enough time to go over the PSR with his attorney. [Id. at 3-4]. The Court noted that, without consideration of variance or departure, the TOL was 39 and the criminal history category was IV, yielding an advisory guidelines range of 360 to 480 months. [Id. at 4]. Petitioner's counsel presented witnesses on Petitioner's behalf and spoke extensively about sentencing factors [Id. at 4-21, 24-26], but also stated that he did not want to suggest anything

5

indicating an intention to withdraw from or breach the plea agreement. [Id. at 18-19]. He acknowledged the following:

> The government could have charged this case way differently, and I know what the ramifications of that would have been. I know what kind of break they've given [Petitioner] already so I'm not arguing that the government has not been fair or generous. They've been both in this case under the facts and circumstances here.
> …
> I've given this a lot of thought because I can't argue to you for a lower – I won't argue to you for a lower sentence because I don't want this deal to go away, and I've told [Petitioner] that.

[Id. at 19]. The Court went on to query counsel regarding the plea agreement's recommended eight-level variance. [Id. at 23-26, 28-36]. In large part, Petitioner's counsel argued that Petitioner was a "low level guy" who had an opioid addiction and ultimately began using heroin and sold drugs only to feed that addiction. [See id.]. The Government advocated for the variance, citing Petitioner's "prior situation with fire, his burns, the fact that he was addicted to opiates, the fact that he had showed a willingness to cooperate, [and] did cooperate on the front end of this investigation." [Id. at 29-30]. Petitioner also directly addressed the Court. He stated, in part, as follows:

> I just want to say that I apologize to the people that were affected by the drugs I sold and to their families. I wish I could trade places with [the victim]. I hate that it happened. I was just – I was stuck. I mean – addiction is a powerful thing and I couldn't shake it. I'm deeply saddened when I see what I became and I try in every way to cooperate with the authorities.
>
> I want to apologize also to the Court and the law enforcement officers and to my family who have stood by me. I would like to thank them for their support and encouragement and also Mr. Brown who has helped me so much.

[Id. at 27]. Ultimately, the Court sentenced Petitioner to a term of imprisonment of 240 months, awarding only a "modest variance from the otherwise applicable sentence to reflect the potential

that the burn injury in 2010, the resulting pain killer addiction that led to 'Petitioner's] own heroin addiction … [which] seems to be the best justification presented to the Court. [Id. at 41-42; see CR Doc. 36 at 2: Judgment]. The Court concluded that the jointly recommended eight-level variance was not justified "considering [Petitioner] continued trafficking heroin even after his conduct caused the death of another person." [CR Doc. 37 at 3: Statement of Reasons]. The Court, however, varied slightly to a TOL of 35 based on Petitioner's opioid addition.[2] [Id.]. Judgment on Petitioner's conviction was entered on May 17, 2018. [CR Doc. 36]. Petitioner appealed. [CR Doc. 32]. The Fourth Circuit dismissed Petitioner's appeal, finding that based on its review of the plea agreement and the plea hearing transcript, Petitioner "knowingly and voluntarily waived his right to appeal" and the sentencing issue he sought to raise fell squarely within that waiver. [CR Doc. 49].

On May 31, 2019, Petitioner timely filed the instant motion to vacate under § 2255. [CV Doc. 1]. As grounds for his § 2255 motion, Petitioner claims his attorneys provided ineffective assistance of counsel on the following grounds: (1) Brown, Petitioner's attorney at sentencing, did not adequately or meaningfully explain the federal law of conspiracy at any time during the criminal proceedings; (2) Johnson, Petitioner's attorney during pre-plea negotiations and at the plea hearing, allowed Petitioner to plead guilty to an amount of heroin in excess of the amount established by the evidence, resulting in a "harsher penalty" for a higher drug weight; (3) Brown, failed to adequately or meaningfully explain the "U.S.S.G. manual" to Petitioner during the critical stages, "pre-plea, pre-trial, pre-sentencing," allowing Petitioner "to continue the guilty plea without a full comprehensive knowledge of the additional sentencing factors;" and (4) Brown failed to argue that there was "no evidence" to determine whether the heroin sold by Petitioner

---

[2] A TOL of 35 and criminal history category of IV yielded a guideline range of 235 to 293 months.

was the "sole cause" of the victim's death, again allowing Petitioner to face "harsher penalties."[3] [CV Doc. 1 at 4-8].

Petitioner does not claim innocence or request a trial. Rather, he requests that his current sentence be vacated and that he be resentenced "to a term uninfluenced by guideline enhancements." [CV Doc. 1 at 12]. Plaintiff also requests an evidentiary hearing and that counsel be appointed. [Id.]. The Government, on this Court's Order, timely responded to Petitioner's motion to vacate [CV Doc. 5] and Petitioner replied [CV Doc. 8].

This matter is now ripe for adjudication.

## II. STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III. DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a

---

[3] Petitioner purports to state grounds one, two, and three against both Brown and Johnson. [See Doc. CV 1 at 4-7]. Petitioner, however, fails to make allegations other than those described herein. The Court, therefore, does not address grounds one or three relative to Johnson or ground two relative to Brown.

8

strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

To establish prejudice in the context of a guilty plea, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Meyer v. Branker, 506 F.3d 358, 369 (4th Cir. 2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)). In evaluating claims under § 2255, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "[C]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 216, 221-22 (4th Cir. 2005). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss … any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22.

When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

When the ineffective assistance claim relates to a sentencing issue, the petitioner must demonstrate a "'reasonable probability' that his sentence would have been more lenient" but for counsel's error. Royal v. Taylor, 188 F.3d 239, 249 (4th Cir. 1999) (quoting Strickland, 466 U.S. at 694)). If the petitioner fails to meet this burden, the "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

### A. Attorney Johnson

Petitioner claims that Johnson "allowed" Petitioner to plead guilty to an amount of heroin more than that established by the evidence, which allegedly led to a harsher penalty. Petitioner also contends that Johnson advised Petitioner to accept the plea agreement offered by the Government and that "the drug amounts didn't actually matter." [CV Doc. 1 at 17].

First, the record of the plea hearing demonstrates that Petitioner's guilty plea was knowing and voluntary. What is more, Petitioner confirmed the validity of his guilty plea at sentencing. As

10

such, Petitioner has waived this pre-plea claim of ineffective assistance. Furthermore, the alleged facts underlying Petitioner's claim on this ground directly contradict Petitioner's sworn testimony at his plea hearing. See Lemaster, 403 F.3d at 221. Petitioner represented under oath that he is guilty of the charge to which he pleaded guilty. Petitioner testified that he agreed with the factual basis describing the quantities for which he was ultimately held responsible at sentencing. Petitioner, absent extraordinary circumstances, remains bound by those sworn statements. Id.

Even if Johnson advised Plaintiff that the drug amount "didn't actually matter," such advice was reasonable. The plea agreement, which has been described in detail above, specified that U.S.S.G. §2D1.1(a)(2) would apply. This section required a base offense level of 38 because a death resulted from the drug activity, regardless of the quantity of drugs involved in the offense. U.S.S.G. §2D1.1(a)(2). As such, any advice that "the drug amounts didn't actually matter" was within the bounds of reasonable professional assistance.

Furthermore, Petitioner has not and cannot shown prejudice. First, the drug amount did not change Petitioner's offense level. Second, Petitioner has not shown there was an objectively reasonable probability for him to have proceeded to trial but for his counsel's alleged errors. In fact, Petitioner does not even request a trial. As such, Petitioner has not shown prejudice. See Meyer, 506 F.3d at 369.

In sum, Petitioner has failed to show deficient performance and prejudice as to his ineffective assistance claim as to Johnson's representation.

### B.   Attorney Brown

Petitioner claims that Brown, his sentencing attorney, offered ineffective assistance for failing to "adequately or meaningfully" explain the federal law of conspiracy; failing to "adequately or meaningfully" explain the "U.S.S.G. manual" to Petitioner during the critical "pre-

11

plea, pre-trial, pre-sentencing" stages; and failing to argue that there was "no evidence" to determine whether the heroin sold by Petitioner was the "sole cause" of the victim's death, allowing Petitioner to face "harsher penalties."

Plaintiff's vague and conclusory assertions as to Brown's representation are insufficient to establish a claim of ineffective assistance. See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations). Furthermore, Plaintiff's claims regarding Brown's alleged failure to explain the law of conspiracy or to explain the "U.S.S.G. manual" before he pleaded guilty (and, inexplicably before trial) are anachronous to the timing of Brown's representation of Petitioner at sentencing only. The Court declines to address them further.

Petitioner's claims that Brown failed to explain the "U.S.S.G. manual" before sentencing and to introduce evidence to determine whether the heroin Petitioner sold to the victim was the sole cause of his death are also meritless. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Strickland, 466 U.S. at 690. Here, Petitioner does not specify what Brown was "constitutionally compelled" to tell him about the sentencing guidelines. See Burger v. Kemp, 483 U.S. 776, 794 (1987) (citation omitted). As such, in addition to failing to show deficient representation, Petitioner cannot establish a reasonable probability that he would have received a different sentence had Brown explained the "U.S.S.G. manual" to him. See Royal, 188 F.3d at 249.

Next, had Brown attempted to introduce evidence of the victim's cause of death at sentencing, he would have undermined the plea agreement in which Petitioner agreed to recommend that the Court apply the guideline for a drug offense that "establishes that death or

12

serious bodily injury resulted from the use of the substance." U.S.S.G. §2D1.1(a)(2). Brown explained at sentencing that the plea agreement Petitioner received was highly favorable and he did not "want to do anything that would suggest" that he and Petitioner were "going to breach the plea agreement." [CR Doc. 44 at 19]. Furthermore, Petitioner had already agreed that the victim's drug overdose resulted from the heroin Petitioner sold. [CR Doc. 14 at 2]. As such, Brown's decision not to challenge the cause of the victim's death was reasonable and well within the bounds of reasonable professional assistance.

In sum, because Petitioner cannot show deficient performance or prejudice, his ineffective assistance claims will be dismissed. See Strickland, 466 U.S. at 687-88; Royal, 188 F.3d at 249.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255, including any motion for appointment of counsel or for an evidentiary hearing, [Doc. 1] is **DENIED** and **DISMISSED**.

2. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive

13

Case 3:17-cr-00253-RJC-DCK   Document 60   Filed 11/10/20   Page 13 of 14

procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

**IT IS SO ORDERED**.

Signed: November 10, 2020

Robert J. Conrad, Jr.
United States District Judge